IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RUSSELL M. HAYES,            )
                             )
        Plaintiff,           )
                             )
    v.                       )       1:10CV379
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social)
Security,                    )
                             )
                             )
        Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Russell M. Hayes, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying him claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI benefits on May 1, 2006 alleging a disability onset date of December 17, 2005. (Tr. 11, 84-91.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 41, 43, 45-49 and 42, 44, 51-57.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 58.) Present at the December 2, 2008 hearing were Plaintiff and his attorney. (*Id.* at 21-40.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 8-20.) On March 12, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-3.)

# II. FACTUAL BACKGROUND

Plaintiff was forty-three years old on the alleged disability onset date, had at least a high school education, could communicate in English, and had no past relevant work. (*Id.* at 19.)

# III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

---

[2] Transcript citations refer to the administrative record.

to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason

3

of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).
[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled as of the date of his decision. (Tr. 19-20.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date of December 17, 2005. (*Id.* at 13.) The ALJ next found in step two that Plaintiff had severe impairments: fibromyalgia and depression. (*Id.* at 14.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four, the ALJ concluded that Plaintiff had no past relevant work. (*Id.* at 18-19.)

### B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's residual functional capacity ("RFC") based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 15.) Based on the evidence

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

as a whole, the ALJ determined that Plaintiff retained the RFC to perform a full range of medium work, including the physical capacity to stand and walk for six hours in an eight hour workday; sit for six hours in an eight hour workday; lift and carry, push and pull fifty pounds occasionally and twenty-five pounds frequently; and no postural, manipulative, visual, communicative, or environmental limitations. (*Id.* at 15.) Furthermore, the ALJ concluded that Plaintiff had the mental RFC to perform unskilled, simple, routine, repetitive tasks on a sustained basis. (*Id.*) In reaching a conclusion about Plaintiff's RFC, the ALJ considered Plaintiff's testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional assessment." (*Id.* at 16.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff had no past relevant work given the "very sporadic nature" of his prior employment and "low levels of posted earnings." (*Id.* at 18-19.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and past

6

work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was 43 years old on his alleged disability onset date which is defined as a "younger individual age 18-49," with at least a high school education, and the ability to communicate in English. (Tr. 19.) The ALJ noted that transferability of job skills was not at issue because Plaintiff did not have past relevant work. (*Id.*) The ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from December 17, 2005, the alleged onset date, through the date of decision. (*Id.* at 19-20.)

## V. ANALYSIS

In pertinent part, Plaintiff argues that (1) the ALJ did not consider his nonexertional limitations in setting his RFC and (2) that the ALJ erred in applying Medical-Vocational Rule 203.28 at step five. (Docket Entry 14 at 2.) As explained below, the undersigned agrees with Plaintiff that the ALJ erred at step five and that remand is therefore proper.

### A. The ALJ Failed to Explicitly Incorporate Social Limitations into the RFC.

Plaintiff argues that the ALJ erred because he did not include in the RFC the conclusions of Dr. Walter Scarborough, a state agency psychiatric consultant, that Plaintiff had moderate limitations in aspects of his mental functioning. (*Id.* at 8-9.) Plaintiff also faults the ALJ for failing to specifically include in his RFC Dr. Scarborough's conclusions that Plaintiff needed a "non-demanding social setting" without "extensive social interaction." (*Id.* at 9.)

7

Dr. Scarborough filled out a Mental Residual Functional Capacity Assessment Form ("MRFCA") for Plaintiff. (Tr. 319-22.) Section I, entitled "Summary Conclusions," is divided into four larger categories and several smaller sub-categories: (1) understanding and memory (three subcategories), (2) sustained concentration and persistence (eight subcategories), (3) social interaction (five subcategories), and (4) adaptation (four subcategories). (*Id.* at 319-20.) Each of the twenty subcategories is followed by a checkbox indicating the degree of limitation: "Not Significantly Limited," "Moderately Limited," "Markedly Limited," "No Evidence of Limitation in this Category," and "Not Ratable on Available Evidence." (*Id.*)

Dr. Scarborough indicated that Plaintiff was "Not Significantly Limited" in twelve of twenty subcategories and was "Moderately Limited" in eight: (1) "ability to understand and remember detailed instructions," (2) "ability to carry out detailed instructions," (3) "ability to maintain attention and concentration for extended periods," (4) "ability to work in coordination with or proximity to others without being distracted by them," (5) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," (6) "ability to interact appropriately with the general public," (7) "ability to accept instructions and respond appropriately to criticism from supervisors," and (8) "ability to respond appropriately to changes in the work setting." (*Id.* at 319-20.)

Dr. Scarborough then found in Section III of the MRFCA, entitled "Functional Capacity Assessment," that Plaintiff had the functional capacity to understand and remember

8

simple directions; concentrate and persist on simple tasks; interact appropriately with coworkers in a work setting "with no demand for extensive social interaction"; and to adapt to simple changes and function independently despite a tolerance for stress that "may be reduced."[6] (*Id.* at 321.) Dr. Scarborough concluded further that Plaintiff could perform simple, routine, repetitive tasks in a non-demanding social setting. (*Id.*)

Plaintiff contends (Docket Entry 14 at 8) the ALJ did not consider Dr. Scarborough's Section I conclusions that Plaintiff was "Moderately Limited" in various subcategories of the MRFCA, including the: (1) "ability to interact appropriately with the general public," (2) "ability to accept instructions and respond appropriately to criticism from supervisors," and (3) "ability to respond appropriately to changes in the work setting." (*Id.* at 320.)

Defendant, in turn, correctly points out (Docket Entry 17 at 13) that Dr. Scarborough's Section I findings were merely preliminary to his Section III conclusions. Specifically, the Commissioner's Programs Operations Manual System, POMS DI 24510.060(B.4.a), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060, instructs state agency medical consultants like Dr. Scarborough to record their assessments of mental functional capacities on Section III of the SSA-4734-F4-SUP form, the form in question here (Tr. 319). The first two pages ("I. Summary Conclusions") of that form, containing in pertinent part the opinions of concern to Plaintiff and identified as (1)-(3) in the preceding paragraph, are to be used as "merely a worksheet" and are not used to record a mental RFC assessment. POMS DI 24510.060(B.2.a) ("*Section I is merely a worksheet* to aid in deciding the presence and degree of

---

[6] Section II of the MRFCA is reserved for "Remarks" and was left blank here. (Tr. 320.)

functional limitations and the adequacy of documentation and *does not constitute the RFC assessment*") (emphasis in original). Therefore, Defendant correctly points out (Docket Entry 17 at 14) that the initial conclusions set forth in Section I were "summary conclusions derived from the evidence in file" (Tr. 319) which were "elaborate[ed]" on in Section III of the form, the actual functional capacity assessment (*id.* at 321). *See also* POMS DI 24510.060(B.4).

In Section III of the form, entitled Functional Capacity Assessment, Dr. Scarborough ultimately concluded that despite Plaintiff's various mental limitations, Plaintiff could perform simple, routine, repetitive tasks "in a work setting with no demand for extensive social interaction" "in a non demanding social setting." (Tr. 321.) In short, Dr. Scarborough's ultimate conclusions, and not the summary conclusions cited by Plaintiff, are what are relevant to Plaintiff's mental RFC.[7]

Finally, Plaintiff points out that the ALJ's RFC does not incorporate Dr. Scarborough's conclusion that Plaintiff is limited to "a non demanding social setting" without "extensive social interaction." (Docket Entry 14 at 9.) These limitations are found in Section III of Dr. Scarborough's assessment, not in Section I. Consequently, this argument is not so easily

---

[7] *See, e.g., Norris v. Astrue*, NO. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov 14, 2008) (unpublished) (summary conclusions opined to by consultant need not be included by ALJ in RFC assessment); *Bates v. Astrue*, No. 07-074-JJF, 2008 WL 1736819, at *11 (D. Del. Apr. 11, 2008) (unpublished) ("Dr. Brandon ultimately translated the limitations he identified in the Summary Conclusions section of the RFC form into an assessment that Plaintiff retained the RFC to perform simple tasks, which the A.L.J. in turn incorporated into his RFC assessment and his questions to the vocational expert. Accordingly, the Court concludes that the A.L.J. did not err in his treatment of Plaintiff's mental health limitations."); *Malueg v. Astrue*, No. 06-C-676-S, 2007 WL 5480523, *7 (W.D. Wis. May 30, 2007) (unpublished) ("The ALJ did not err by not using the Section I worksheet portion of the Mental RFC form in determining plaintiff's RFC finding."); *Lichtenstein v. Barnhart*, No. 05-111-P-H, 2006 WL 1554630, at *3 (D. Me. Jun.1, 2006) (unpublished) ("Section III . . . rather than Section I . . . constitutes . . . [the] RFC assessment.").

dismissed because the ALJ expressly stated that he agreed with Dr. Scarborough's ultimate (*i.e.*, Section III) conclusions. (Tr. 18 ("After a careful review of all the evidence presented in the instant case, the undersigned agrees with Dr. Scabough's [sic] determination, because his assessment is supported by the psychiatric clinical evidence of record.")

Defendant concedes that the ALJ agreed with Dr. Scarborough's assessment but asserts that "Unskilled work, by its very nature, simply does not take place in a demanding social setting and does not involve excessive social interaction." (Docket Entry 17 at 15.) In support, Defendant cites 20 C.F.R. §§ 404.1568(a) and 416.968(a), stating that unskilled work "needs little or no judgment to do simple duties," and 20 C.F.R. § 404, Subpart P, Appx. 2, § 201.00(i), stating that unskilled work primarily involves working with things rather than people.[8] Defendant notes too that unskilled work relies so little on social interaction that even illiteracy or the inability to communicate in English "has the least significance" on one's ability to do unskilled work. *Id.* Defendant also cites Social Securing Ruling ("SSR") 96-9p,

---

[8] Section 201.00(i) states in full:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18–44 even if they are illiterate or unable to communicate in English.

20 C.F.R. § 404, Subpart P, Appx. 2, § 201.00(i).

11

*Determining Capability to do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, noting that "Basic Communication is all that is needed to do unskilled work. The ability to hear and understand simple oral instructions or to communicate simple information is sufficient. If the individual retains these basic communication abilities, the unskilled sedentary occupational base would not be significantly eroded in these areas." SSR 96-9p.

The undersigned is not convinced Plaintiff's social limitations, as set forth by Dr. Scarborough, are mere surplusage, nor is the undersigned convinced that unskilled work by definition accommodates all of Plaintiff's social limitations. Nevertheless, even assuming Plaintiff's social limitations are encompassed in his restriction to unskilled work, as explained below, the ALJ's errors at step five still require remand. And, on remand, the ALJ will have the opportunity to expressly clarify to what degree, if any, these limitations are a part of Plaintiff's RFC.

### B. The ALJ's Step Five Analysis Does Not Permit Meaningful Judicial Review.

Plaintiff argues that the ALJ's step five finding that Plaintiff could perform work existing in significant numbers in the national economy lacks evidentiary support because the ALJ erroneously relied on the medical-vocational guidelines. (Docket Entry 14 at 9-10.) After a thorough review of the administrative record and the relevant case law, the undersigned has concluded that Plaintiff is correct and that remand is therefore proper.

If a claimant cannot return to his past relevant work, the burden shifts to the Commissioner to show that other jobs exist in significant numbers that Plaintiff could

12

perform. *Hunter*, 993 F.2d at 35; *Wilson*, 617 F.2d at 1053. If a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, the Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. *Aistrop v. Barnhart*, 36 Fed. Appx. 145, 146 (4th Cir. 2002). To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the Grids may not be relied upon to demonstrate the availability of alternate work activities. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). Rather, when a claimant suffers from both exertional and nonexertional limitations, the Grids are not conclusive but may only serve as a guide. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)). A nonexertional limitation is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not . . . [s]uch limitations are present at all times in a claimant's life, whether during exertion or rest." *Woody v. Barnhart*, 326 F. Supp. 2d 744, 752 (W.D. Va. 2004) (quoting *Gory*, 712 F.2d at 930)). Typically, they are conditions such as mental disorders (including depression), environmental intolerances, substance addictions, or sensory impediments. *Id.* (citing 20 C.F.R. § 1569a, SSR 96–8p; and *Walker*, 889 F.2d at 48-49). Furthermore "[a] non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category." *Aistrop*, 36 Fed. Appx. at 147 (citing *Gory*, 712 F.2d at 930).

However, not every nonexertional limitation or malady rises to the level of a

13

nonexertional impairment so as to preclude reliance on the Grids. *Walker*, 889 F.2d at 49 (citing *Grant*, 699 F.2d at 189). The proper inquiry is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable. *Id.* If so, the Commissioner must produce a VE to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy. *Grant*, 699 F.2d at 192 (citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). To directly apply the Grids to a nonexertional impairment, an ALJ must therefore first find as fact that the impairment does not significantly affect the occupational base of work at the relevant exertional level.[9]

To directly apply the Grids here, therefore, the ALJ was required to determine that Plaintiff's nonexertional limitations did not significantly reduce his ability to perform a full range of work at the medium exertional level. Yet, the ALJ made no such finding as to Plaintiff's nonexertional limitation to simple, routine, repetitive tasks.[10] Nor did the ALJ use the Grids as a framework in tandem with VE testimony to resolve this issue.

Still, the ALJ applied the Grids anyway, concluding that there were jobs in the national

---

[9] *See, e.g., Stratton v. U.S. Dep't of Health & Human Servs.*, No. 88–1614, 1989 WL 100814, at *3 (4th Cir. May 8, 1989) (unpublished opinion) (concluding "it is for the ALJ to determine as a question of fact whether the [nonexertional limitation] complain[ed] of affects [the claimnt's] residual capacity to engage in certain work activities") (citation and quotations omitted); *Smith*, 719 F.2d at 725 ("Whether a given nonexertional condition affects a particular claimant's residual capacity to engage in certain job activities is a question of fact."); *Phillips v. Astrue*, No. 1:10CV289, 2011 WL 5039779, *3 (M.D.N.C. Oct. 24, 2011) (unpublished) (concluding that "the ALJ may rely exclusively on the Grids where the ALJ has properly decided, as an issue of fact, that Plaintiff's non-exertional condition does not significantly affect" ability to work) (citation omitted).

[10] Nor did the ALJ make a finding as to whether Dr. Scarborough's assessment (an assessment with which the ALJ agreed) that Plaintiff be limited to "a non demanding social setting" without "extensive social interaction" would erode the occupational base. However, as explained above, the undersigned assumes for the sake of argument that Plaintiff's social limitations are adequately incorporated into the nature of unskilled work. (Tr. 321.)

economy that Plaintiff could perform. (Tr. 19.) Failure to render a finding as to whether Plaintiff's nonexertional limitations significantly reduced his ability to perform a full range of work at the medium exertional level prevents meaningful judicial review because the Court is in the position of having to determine whether substantial evidence exists to support a non-existent factual finding. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("The Secretary must present us with findings and determinations sufficiently articulated to permit meaningful judicial review."). The Fourth Circuit Court of Appeals has instructed this Court that "it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact . . . ." *Hays*, 907 F.2d at 1456; *see also King*, 599 F.2d at 599 (noting that the courts "*do*[ ] *not find facts* or try the case de novo when reviewing disability determinations") (emphasis added). Remand is thus proper so that the ALJ may determine whether Plaintiff's nonexertional limitations significantly affect Plaintiff's capacity to work.[11]

Defendant disagrees, essentially arguing that remand is unnecessary here because unskilled work, by its very nature, encompasses all of Plaintiff's nonexertional limitations. (Docket Entry 17 at 16-20.) Therefore, Defendant appears to contend, the Grids—which adequately account for unskilled work—also adequately account for all Plaintiff's limitations.

---

[11] *See, e.g., Phillips v. Astrue,* Civ. Action No. 4:11–cv–01018–JMC–TER, 2012 WL 3765184, *4 (D.S.C. June 11, 2012) (unpublished) (concluding that remand was proper "[b]ecause Plaintiff's depression is a severe non-exertional impairment and the ALJ restricted Plaintiff to work requiring only simple, routine, and repetitive tasks with limited social interaction, [therefore] it is likely that the Plaintiff cannot perform the full range of work activity within a Grid category") *adopted by* 2012 WL 3775968 (D.S.C. Aug. 30, 2012) (unpublished); *Haselden v. Astrue*, C/A No. 9:10–545–CMC–BM, 2011 WL 2036457, *2-3 (D.S.C. 2011) (unpublished) (remanding for VE testimony where claimant was limited to performance of "a full range of unskilled work at all exertional levels, subject to the nonexertional limitations of being restricted to work involving simple routine, repetitive tasks with only limited social interaction").

15

Defendant cites a number of cases in support of this proposition. (*Id.* at 18-19). The undersigned is not convinced. Simple, routine, repetitive work is not synonymous with unskilled work but is instead a narrower category.[12] Therefore, Plaintiff's severe nonexertional impairment of depression, and its attendant limitations, make it likely that Plaintiff cannot perform the full range of work activity within the medium exertional Grid category.[13] Moreover, while the cases Defendant cites,[14] largely unpublished cases from other circuits, demonstrate some support for Defendant's position, none of the Grid cases cited by Defendant expressly address a situation where, as here, an ALJ omitted a factual

---

[12] *See Walls v. Astrue*, No. 1:11CV318, 2013 WL 954361, at *4 (W.D.N.C. Feb. 22, 2013) (unpublished) (remanding for further consideration after concluding that "simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work") (citation and quotations omitted) *adopted in* 2013 WL 951583, at *1 (W.D.N.C. March 12, 2013) (unpublished); *Powell v. Astrue*, No. 6:09–cv–0900–JFK–WMC, 2010 WL 3168308, at *16 (D.S.C. May 4, 2010) (unpublished) (reasoning that simple, routine, repetitive tasks are a subset of unskilled work) *adopted in* 2010 WL 3168310, at *3-4 (D.S.C. Aug. 10, 2010) (unpublished); *Teeter v. Astrue*, No. 3:12–CV–190–GCM, 2012 WL 5405531, at *2-3 (W.D.N.C. Nov. 6, 2012) (unpublished) (adopting Memorandum and Recommendation finding that unskilled work is not synonymous with a limitation to simple, routine, repetitive tasks); *see also Vuxta v. Comm'r of Social Security*, 194 Fed. App'x 874, 878 (11th Cir. 2006) (concluding that while definition of "simple" is encompassed by "unskilled" work "repetitive" is not); *Frye v. Astrue*, No. 1:11–CV–1019, 2012 WL 1831548, at *23 (N.D. Ohio April 9, 2012) (unpublished) ("This Court agrees that the set of jobs that comprise the category of 'unskilled' jobs are not identical to the set of jobs that comprise the category of 'simple, routine' jobs and that not every job that is 'unskilled' is also 'simple, routine and repetitive.'") *adopted in* 2012 WL 1831537, at *1 (N.D. Ohio May 18, 2012) (unpublished).

[13] *See, e.g., Phillips*, 2012 WL 3765184, at *4; *Townsend v. Astrue*, C/A No. 9:10–1525–JFA, 2011 WL 4055402, *4 (D.S.C. Sept. 12, 2011) (unpublished) ("[B]ecause plaintiff's depression is a severe non-exertional impairment and the ALJ restricted Plaintiff to work requiring only simple, routine and repetitive tasks with limited social interaction, it is certainly likely that the plaintiff cannot perform the full range of work activity within a Grid category.").

[14] *See Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) (unpublished); *Wild v. Chater*, No. 95-35521, 1996 WL 560104, at *4 (9th Cir. 1996) (unpublished); *Prescott v. Soc. Sec. Comm'r.*, Civ. No. 1:09-CV-00522-JAW, 2010 WL 4259001, at *10 (D. Me. Oct. 21, 2010) (unpublished); *Conrad v. Astrue*, Civ. No. 08-2851, 2009 WL 1948831, at *3 (N.D. Cal. July 2, 2009) (unpublished); *Dollins v. Astrue*, Civ. No. 08-141-KSF, 2008 WL 4402208, at *4 (E.D. Ky., Sept. 24, 2008) (unpublished); *Bovell v. Barnhart*, Civ. No. 05-2140, 2006 WL 1620178, at *3 (E.D. Pa. June 9, 2006) (unpublished).

16

finding regarding the impact of the claimant's nonexertional limitations on his ability to perform a full range of work at the medium exertional level.

Defendant also implies that because Plaintiff is exertionally limited to medium work, which also encompasses light and sedentary work, Plaintiff's occupational base is so large that it is unlikely to be significantly eroded by his limitations. (*See, e.g.*, Docket Entry 17 at 16 n.4.) That may (or may not) ultimately prove true. However, as explained, the burden of proof is with the Commissioner at the fifth step. As it is the Commissioner's burden at this step to make findings and support them with substantial evidence, the undersigned believes that the appropriate course here is to remand this case back to the ALJ for a determination whether there are a significant number of unskilled jobs which Plaintiff can perform, given his nonexertional limitations, and if necessary the testimony of a vocational expert. *See Campbell v. Apfel*, No. 97-2128, 1998 WL 911740, at *4 (4th Cir. Dec. 31, 1998) (unpublished) ("Because non-exertional impairments vary, the differing degrees of losses and their effects on the occupational base can best be analyzed by a vocational expert."). The Court declines consideration of the additional issues raise by Plaintiff at this time. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–764 (W.D. Va. 2002) (on remand, the ALJ's prior decision as no preclusive effect, as it is vacated and the new hearing is conducted de novo).

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**,

and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 13) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be **DENIED**.

                                                       Joe L. Webster
                                                 United States Magistrate Judge

Durham, North Carolina
June 6, 2013